```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
BRENDAN DELANEY,                                             :
                                                             :
                                   Plaintiff,                :      13-CV-9183 (VEC)
                                                             :
                  -against-                                  :      OPINION & ORDER
                                                             :
DR. THOMAS FARLEY, in his official capacity                  :
as Commissioner of the New York City                         :
Department of Health and Mental Hygiene                      :
(DOHMH); DR. LYNN SILVER, Assistant                          :
Commissioner, New York City Department of                    :
Health and Mental Hygiene, and Chair for                     :
NYCRx, Inc., a Not-for-Profit Organization; and              :
the City of New York,                                        :
                                                             :
                                   Defendants.               :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/07/2014

VALERIE CAPRONI, District Judge:

　　Plaintiff, a former Senior Director of Administration for the New York City Department of Health and Mental Hygiene ("DOHMH") in its Bureau of Chronic Disease Prevention and Control (the "Bureau"), brings this 1983 action alleging violations of his First and Fourteenth Amendment rights under the United States Constitution, 42 U.S.C. § 1983, as well as violations of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y. Admin. Code § 8-107. Plaintiff further claims violations under New York General Municipal Law § 51.

　　Plaintiff alleges that in May 2010 he was wrongfully discharged in retaliation for his "blowing the whistle" on certain alleged wrongdoing by his boss, Defendant Dr. Lynn Silver. Plaintiff also alleges that he was discriminated against on the basis of his gender.

Defendants have moved to dismiss Plaintiff's Second Amended Complaint (the "2d Am. Compl.") pursuant to Rules 12(b)(2)[1] and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims are time-barred and that they fail to state a cause of action. Although the Plaintiff is to be commended for bringing his concerns about wrongdoing by a City employee to the attention of the appropriate authorities, his lawsuit alleging discrimination and retaliation against him for doing so is time-barred. For the reasons discussed more fully below, Defendants' Motion to Dismiss is GRANTED and the Second Amended Complaint is DISMISSED.

## BACKGROUND[2]

Plaintiff began working as Senior Director of Administration for the Bureau in May 2008. 2d Am. Compl. ¶ 11. At the time, Defendant Silver was the Assistant Commissioner for the Bureau and also the Chair of NYCRx, a not-for-profit organization registered in New York State. *Id.* ¶ 8. Silver supervised Plaintiff in her role as Assistant Commissioner for the Bureau. *Id.* ¶ 19. Defendant Dr. Thomas Farley was the Commissioner of DOHMH. *Id*. ¶ 7.

### I.     Plaintiff's Investigation and Reporting of Defendants' Misconduct

Plaintiff was responsible for all administrative functions, including contracts, procurement, budget, budget modification and personnel for twelve departments. *Id.* ¶ 12. Plaintiff performed his job well, eliminating during his first year over $7 million in accruals in

---

[1]     Although Defendants' Motion to Dismiss cites Rule 12(b)(2) of the Federal Rules of Civil Procedure, it is entirely devoid of any argument regarding personal jurisdiction.

[2]     On a motion to dismiss for failure to state a claim, the Court assumes the truth of the facts as alleged by Plaintiff. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 135 (2d Cir. 2013). At the pleading stage, courts will generally not consider materials extrinsic to the complaint. *See* Fed. R. Civ. P. 12(d). This rule is subject to several exceptions, however, including that a court may consider documents upon which the complaint heavily relies, *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002), as well as extrinsic materials that the plaintiff knew of or possessed, and relied upon in framing the complaint. *Laporte v. Fisher*, No. 11 CIV. 9458 (PKC) (HBP), 2012 WL 5278543, at *2 (S.D.N.Y. Oct. 24, 2012) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

the programs for which he was responsible. *Id.* ¶ 11. On June 5, 2009, Silver gave Plaintiff a performance evaluation of "Greatly Exceeds Expectations" and told him that every program director was happy with his performance. *Id.* ¶¶ 19, 85.

By approximately July 2009, Plaintiff had developed concerns about a potential conflict of interest between Defendant Silver's employment with the DOHMH and her involvement with NYCRx. *Id.* ¶ 20. Both the Bureau and NYCRx Inc. were located on the same floor of the same office building, *id.* ¶¶ 14, 34, and Silver allegedly disregarded potential conflicts of interest between her roles as Assistant Commissioner for the Bureau and Chair of the NYCRx Board. *Id.* ¶¶ 14-17, 20-28. According to Plaintiff, NYCRx was given rent-free accommodations and allowed to utilize DOHMH goods and services without cost. *Id.* ¶¶ 17, 49. The goods and services at issue were funded through the City Tax Levy ("CTL"), and NYCRx was an independent not-for-profit that did not receive CTL funding. *Id.* ¶¶ 13-16, 20-25, 49. Second, Silver and her subordinates allegedly favored NYCRx during the contract selection process for a DOHMH program even though NYCRx's bid was $66,000 higher than the competitor's bid. *Id.* ¶¶ 33, 35-37. Finally, Silver allegedly falsified NYCRx's Tax Returns for 2007 and 2008, *inter alia*, by failing to disclose that NYCRx paid no rent and received free supplies and equipment, and by failing accurately to disclose NYCRx employees whose salaries were being paid for by the City. *Id.* ¶¶ 39, 49-51.

When Plaintiff orally raised these concerns with Silver in July 2009 and September 2009, Silver allegedly instructed him to "do [his] job," and said that she was in charge of the Bureau and "could do whatever [she] wanted[ed]." *Id.* ¶¶ 24, 44. Immediately following Plaintiff's meeting with Silver on September 1, 2009, Plaintiff alleges that Silver began to place undue pressure on him and a female colleague to ensure that the NYCRx contract would be approved as quickly as possible. *Id.* ¶ 46. In February 2010, Plaintiff reported his concerns about Silver to

the New York City Department of Investigation ("DOI") and later provided DOI officials with documents and records supporting his allegations. *Id.* ¶¶ 60-62.

## II. Plaintiff's Termination

On December 30, 2009, Silver and several of her subordinates generated a layoff list for the Bureau. *Id*. ¶ 53. Although Plaintiff's name was on this list, he was not told that he was being considered for termination. *Id.* ¶ 64. In or around January 2010, Plaintiff learned that two of his female colleagues had been notified that they would be laid off in June 2010. *Id*. ¶ 55. On January 14, 2010, Plaintiff asked Silver whether others would be affected by the layoffs, and Silver responded that she would let him know. *Id*. ¶ 56. Silver later discussed the proposed layoffs at a joint Directors meeting on March 2, 2010, but, again, did not inform Plaintiff that he would be discharged. *Id*. ¶ 64.

Between February and March 2010, the DOI began to take overt steps to investigate Plaintiff's allegations, including interviewing employees of the Bureau who may have had relevant information. *Id*. ¶ 67. Based on the similarity of the concerns that Plaintiff had raised directly with Defendant Silver and the questions asked by the DOI investigators, it was evident that Plaintiff was the impetus for the DOI investigation. *Id*. ¶ 68.[3]

On April 7, 2010, Silver informed Plaintiff of his pending termination. *Id*. ¶ 72. Specifically, as Plaintiff alleged in his Verified Complaint, filed in the Supreme Court of the State of New York, New York County, on April 7, 2010, the following exchange took place between Plaintiff and Silver while they were in Silver's office:

> Defendant said, "I hope you signed up to attend the layoff sessions."
> Plaintiff responded, "Are you trying to tell me I'm being laid off?"

---

[3] Ultimately, DOI sustained some of Plaintiff's allegations in a report dated March 7, 2011. *Id.* ¶ 79. Plaintiff believes that, as a consequence of his allegations, the NYCRx contract was withdrawn, and NYCRx was ordered to leave its rent-free accommodations. *Id.* Defendant Silver was allegedly forced to resign as Chair of the NYCRx Board. *Id.*

>        Defendant said, "Yes. It's the budget."

Exhibit A to the Schmelzer Declaration (Plaintiff's Verified Complaint filed in the Supreme Court of the State of New York, New York County, on April 20, 2013) ¶ 334.[4]  During that meeting, Plaintiff questioned why he was not afforded the same courtesy as his female peers, who were given sufficient notice that they were being laid off in order to find another position commensurate with their experience.  2d Am. Compl. ¶¶ 55-58, 64, 71-72, 94.  Silver did not reply.  *Id.* ¶ 72.

On April 28, 2010, Plaintiff received an official termination letter, indicating that he was being terminated due to financial constraints and that his termination would be effective May 14, 2010.  *Id.* ¶¶ 76-77.  Following his termination, Plaintiff's position was filled by a female employee who was "substantially less qualified."  *Id.* ¶¶ 87-88.  Several days later, Plaintiff commenced work in DOHMH's Division of Health Care Access and Improvement as an Administrative Staff Analyst, a lower-salaried non-managerial position.  *Id.* ¶ 86.  Plaintiff alleges that he was discharged for questioning Silver's unethical and illegal practices and filing a complaint with DOI, and also discriminated against on the basis of his gender.  *Id.* ¶¶ 84-85, 92, 108.

### III.     Procedural History

On April 20, 2013, Plaintiff filed a Verified Complaint against Defendants Farley and Silver in the Supreme Court of the State of New York, New York County, alleging wrongful discharge and retaliation under applicable whistleblower statutes, along with other tort claims.  *See* Ex. A to the Schmelzer Decl. ¶ 1.  On or about December 10, 2013, Plaintiff filed an

---

[4] The Court can consider facts sworn to in the Plaintiff's original Verified Complaint when deciding the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) because it is a document that Plaintiff clearly possessed and relied on in framing the Second Amended Complaint.  *Laporte v. Fisher*, 2012 WL 5278543, at *2.

Amended Complaint, which added the City of New York as a Defendant and asserted for the first time constitutional violations for retaliation under the First Amendment and gender discrimination under the Fourteenth Amendment. *See* Ex. B, annexed to the Schmelzer Decl. (Plaintiff's Amended Complaint filed on or about December 10, 2013) ¶ 1. Defendants removed this action to Federal Court on or about December 30, 2013. Dkt. 1. In response to Defendants' motion to dismiss the Amended Complaint, Plaintiff filed the Second Amended Complaint on May 14, 2014. Dkt. 19. On June 18, 2014, Defendants moved to dismiss the Second Amended Complaint.

## DISCUSSION

### I. Plaintiff's Retaliation and Gender Discrimination Claims Are Time-Barred

Plaintiff's claims for violations of his First and Fourteenth Amendment rights, brought pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), are all subject to three year statutes of limitations. *See Walker v. Orange Police Dep't*, 208 F.3d 204, 204 (2d Cir. 2000) (statute of limitations in a § 1983 action is determined from the state statute of limitations) (citing *Board of Regents v. Tomanio,* 446 U.S. 478, 484 (1980); *Leon v. Murphy,* 988 F.2d 303, 310 (2d Cir. 1993)). *See also Myers v. Camden Cent. Sch. Dist.,* No. 5:10-CV-1167 (GTS) (TWD), 2012 WL 2921574, at *7 (N.D.N.Y. July 17, 2012) (New York C.P.L.R. § 214, which governs all Section 1983 claims, establishes a three-year limitations period); *Belton v. City of New York*, No. 12-CV-6346 (JPO), 2014 WL 4798919, at *4 (S.D.N.Y. Sept. 26, 2014) ("a three-year statute of limitations applies to claims under the NYSHRL and NYCHRL") (citations omitted).

While state law determines the applicable period of limitations, federal law determines when Plaintiff's Section 1983 cause of action accrues. *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 555-56 (D. Conn. 2008) (citing *Wallace v. Kato*, 549

6

U.S. 384, 388 (2007); *Leonhard v. United States,* 633 F.2d 599, 613 (2d Cir.1980)).  Under federal law, a Section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002).

With respect to Plaintiff's whistleblower and gender discrimination claims, the accrual date is often analyzed under the same framework used for Title VII and Age Discrimination in Employment Act ("ADEA") claims, as to which the limitations period commences when the termination decision is made and communicated to the employee.  *Delaware State Coll. v. Ricks*, 449 U.S. 250, 251 (1980).  *See also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.), *cert. denied,* 474 U.S. 851 (1985) (limitation period for ADEA claim begins to run "on the date when the employee receives a definite notice of the termination") (citations omitted); *Economu v. Borg-Warner Corp.,* 829 F.2d 311, 315 (2d Cir. 1987) (limitations period for ADEA claim runs from the date on which Defendants "had established [their] official position—and made that position apparent to [Plaintiff]") (quoting *Ricks,* 449 U.S. at 262)).  *Cf. Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00 CV 6307 (KMK), 2007 WL 259937, at *7 n.10 (S.D.N.Y. Jan. 29, 2007) *aff'd sub nom. Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.,* 307 F. App'x 596 (2d Cir. 2009) ("Although the statute of limitations for [1983 claims] differs from that of Title VII and the ADEA, the substantive framework for evaluating them is identical") (citation omitted).

The parties dispute the date on which Plaintiff's retaliation and gender discrimination claims accrued.  Defendant argues that Plaintiff's claims accrued on April 7, 2010, when Plaintiff was notified of his termination during an in-person meeting with Silver.  Defs.' Mem. at 5 (Dkt. 24).  Plaintiff argues that he did not have definitive notice of his termination until April 28, 2010, when he received a termination letter from DOHMH's Human Resources Department stating that he would be terminated as of May 14, 2010.  Pl.'s Opp. at 9 (Dkt. 28).  Plaintiff

contends that his April 7, 2010 conversation with Silver was not sufficiently "definite" because Silver merely suggested that Plaintiff would be terminated and did not provide a specific date of termination. *Id.* at 9-10.

Plaintiff's position, however, is contradicted by his original Verified Complaint, in which he swore that during the April 7, 2010, meeting, after Silver recommended that Plaintiff attend a "layoff session," Plaintiff asked if he was "being laid off" and Silver responded: "Yes. It's the budget." Ex. A to the Schmelzer Decl. ¶ 334. Although Plaintiff's Second Amended Complaint abandoned the specificity of his original Verified Complaint and characterized Silver's comments as merely "suggesting that Plaintiff was being laid off," *see* 2d Am. Compl. ¶ 72, there was nothing ambiguous or tentative about Silver's statements as quoted by Plaintiff in his initial Complaint. *See Cole v. CBS, Inc.*, 634 F. Supp. 1558, 1562 (S.D.N.Y. 1986) (oral notice that clearly and unambiguously indicated termination decision was sufficient to trigger limitations period); *Moore v. City of New York*, No. 08 CIV. 8879 (PGG), 2010 WL 742981, at *8 (S.D.N.Y. Mar. 2, 2010) (date on which Plaintiff received notice of termination, as opposed to date Plaintiff received termination letter, controls for limitations purposes).[5]

Because Plaintiff is bound by his prior allegations establishing that he received unequivocal notice of his termination on April 7, 2010, Plaintiff's retaliation and gender discrimination claims, which he first asserted on April 20, 2013 and December 10, 2013, respectively, are time-barred. *See United States* v. *McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (where allegations in an amended pleading are inconsistent with or contradictory to prior allegations, the prior allegations are deemed to be binding admissions).

---

[5] Plaintiff's suggestion that he could not have received definitive notice without being informed of the specific date on which he would be terminated is not legally correct. *See, e.g.*, *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980) (holding that the statute of limitations period begins to run once the employer's decision is "made and communicated" to the employee, without requiring a specific termination date).

## II.   Plaintiff's Municipal Liability Claim Fails to State an Underlying Constitutional Violation

To establish his claim for municipal liability under Section 1983, Plaintiff must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citations omitted).  *See also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  As the Second Circuit has previously held, municipal liability under *Monell* does not provide a separate cause of action but rather "*extends* liability to a municipal organization" where the organization's policies or customs led to an independent constitutional violation.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  *See also Jennis v. Rood*, 310 F. App'x 439, 440-41 (2d Cir. 2009) (dismissing municipal liability claims where underlying constitutional claims were dismissed as time-barred).  Because Plaintiff's claims of underlying constitutional violations are time-barred, his claim for municipal liability fails.

## III.   The Court Declines to Exercise Jurisdiction Over Plaintiff's Claim Pursuant to New York General Municipal Law § 51

Plaintiff also brings a taxpayer claim pursuant to New York General Municipal Law § 51 to compel Silver to restore allegedly wasted municipal funds that were unlawfully diverted to NYCRx.  Because the Court has dismissed Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c); *Yorkshire Towers Co., L.P. v. U.S. Dep't of Transp.*, No. 11 CIV. 1058 (TPG), 2011 WL 6003959, at *7 (S.D.N.Y. Dec. 1, 2011) (declining to exercise supplemental jurisdiction over state law claims brought under New York General Municipal Law § 51).

## CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is GRANTED and the Plaintiff's Second Amended Complaint is DISMISSED.  Plaintiff is not being granted leave to

amend the Complaint because he has already amended his Complaint twice and, given the ruling of the Court, further amendment would be futile.

The Clerk of the Court is respectfully requested to close the docket and terminate the case.

**SO ORDERED.**

Date:  November 7, 2014
       New York, NY

**VALERIE CAPRONI**
**United States District Judge**